**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NY-32 REALTY GROUP, INC.,**

                                        **Plaintiff,**

         **vs.**                                                    **1:22cv803**
                                                                    **(TJM/DJS)**


**WESTCOR LAND TITLE INSURANCE COMPANY,**

                                        **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

                              **DECISION & ORDER**

         Before the Court are the Defendant Westcor Land Title Insurance Company's

motion for summary judgment and Plaintiff NY-32 Realty Group, Inc.'s motion for partial

summary judgment.  See dkt. #s 17, 19. The Court will decide the motions without oral

argument.

**I.      BACKGROUND**

         This case concerns claims insurance coverage for claims brought against Plaintiff

NY-32 Realty Group, Inc. ("NY-32") in state courts in New York.  NY-32 claims that

Defendant Westcor Land Title Insurance Company ("Westcor") had an obligation to

provide such coverage under an insurance policy between the two parties.  The litigation

concerns a title insurance policy Westcor issued to NY-32 for property that Plaintiff

purchased in the Town of Catskill, New York.  Plaintiff's Statement of Material Facts in

1

Support of its Motion for Partial Summary Judgment (Plaintiff's Statement"), dkt. # 19-1, at

¶¶ 1, 4.[1]  The property passed to Plaintiff from L&H Resort Systems, LP for $5.8 million,

and Plaintiff paid this sum.  Id. at ¶ 2.  Yuzheng Miao, as President of L&H, and William

Su, as a member of L&H, executed the deed that conveyed the property from L&H to

Plaintiff.  Id. at ¶ 3.

The parties agree that, "[s]hortly after Plaintiff acquired the Property, several third

parties alleged claims adverse to and/or defects in Plaintiff's title."  Id. at ¶ 10.  On June

23, 2014, Zhongyi Pei and Yiyan Zhang brought an action in the Supreme Court of New

York County, New York, against L&H Resorts Systems, LP, Li Li and Yiqing Han that

sought an accounting and alleged various causes of action regarding the ownership of

property located at 4858 Route 32, Catskill, New York ("the Inn").  Defendant's Statement

of Material Facts in Support of its motion for summary judgment ("Defendant's

Statement"), dkt. # 17-2, at ¶ 1.  Plaintiff is not a party to the New York County action.  Id.

at ¶ 2.  The New York County action, however, involves the same property as this case.

Id.  In addition, counsel for Pei and Zhang entered into a stipulation in the New York

County case on November 10, 2014 with counsel for Li and L&H that put in place a

temporary restraining order and preliminary injunction that prohibited Li from selling,

transferring, disposing of, or otherwise encumbering the property at issue in this matter

without providing 30 days notice to Pei and Zhang ("the Stipulation").  Id. at ¶ 2.  Plaintiff's

Complaint in this action contains as an exhibit a "Proposed Second Amended Complaint"

---

[1]The parties filed the statements of material fact about which they contend they are no disputes in support of their motions for summary judgment and responses thereto as required by the Local Rules. The Court will note where there are disputes and cite the other statements where appropriate.

from the New York County action.  Id. at ¶ 3.  The court in New York County denied the request to amend the complaint.  Id.  Instead, the Hon. Joel M. Cohen on September 8, 2022 signed an order transferring the New York County case to Greene County, where the action was consolidated with a case pending in that court.  Id. at ¶ 4.

Plaintiff NY-32 Realty was named a defendant in the Greene County action, titled Han, Zhang et al v. NY-32 Realty Group, Inc.  Id. at ¶ 5.  Han, Ahang, and Pei, who were the Plaintiffs in the Green County action, alleged that on February 27, 2020, NY-32 Realty and others worked in tandem unlawfully to transfer the Inn without proper corporate authority and contrary to a stipulation in the New York County Supreme Court that prohibited sale of the property without advance notice to individual plaintiffs.  Id. at ¶ 6. NY-32 denies that the statement accurately describes the allegations in the Greene County action and refers the Court to the Complaint in that case.  Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response"), dkt. # 29-1, at ¶ 6. Plaintiff does not point the Court to any of these alleged inaccuracies, however.  Id.  The individual plaintiffs in the Green County case also alleged that Li used a deed dated February 27, 2020 that was recorded in the Greene County Clerk's Office to "[cause] L&H to fraudulently transfer the Inn to NY-32 Realty."  Defendant's Statement at ¶ 7.  Plaintiff denies that the statement accurately represents the allegations in the underlying action, but again fails to report to the Court how the allegation distorts the Complaint.  Plaintiff's Response at ¶ 7.  Plaintiff also denies the "veracity" of that allegation.  Id.

The individual plaintiffs in the Greene County action also alleged that Li caused the fraudulent transfer of the Inn by having two persons, Yuzheng Maio and William Su, represent that they had authority with L&H and "fraudulently execute the deed conveying

the Inn from L&H to NY-32 Realty."  Defendant's Statement at ¶ 8.  Plaintiff denies this

statement in the same way that Plaintiff denies the other statements regarding the

allegations in the Complaint.  Plaintiff's Response at ¶ 8.   The Greene County complaint

alleges that "'NY-32 Realty knew that Maio and Su were not officers, directors, or

shareholders of L&H and that both were without any authority to execute the Deed on

behalf of L&H" and that "NY-32 Realty executed the Deed in order to gain an advantage

unto themselves and to which they were not entitled, and have benefitted from the

purported conveyance of the [Inn] to the disadvantage of Plaintiffs."  Defendant's

Statement at ¶ 9.  Plaintiff denies the allegations in the same way as previous.  Plaintiff's

Response at ¶ 9.

        The individual plaintiffs in the Greene County action also allege that Li had been

"'similarly accused' of fraudulently conveying property in Erie County only twenty days

before the transfer of the Inn to NY-32 Realty[.]"  Id. at ¶ 10.  Defendant contends that the

complaint alleged that the Erie County transfer went to "an entity controlled by Yiyao Fu

p/k/a Elena Fu."  Id. The Greene County plaintiffs alleged that "Fu also controls defendant

NY-32 Realty" and that "Li fraudulently transferred the property to Erie county to an entity

controlled by Fu on January 30, 2020, and then, on February 27, 2020, Li conspired with

Maio and Su to fraudulently transfer the Friar Tuck Inn to an entity also controlled by Fu."

Id.  Plaintiff denies this statement in the same way that Plaintiff denies the other

statements citing the Greene County complaint.  Plaintiff's Response at ¶ 10.

        As relief, the individual plaintiffs in Greene County seek to have the deed,

"purportedly executed on behalf of L&H by persons without authority[,] . . . set aside."

Defendant's Statement at ¶ 11.  Plaintiff acknowledges the complaint contains such

4

allegations, but deny they are true.  Plaintiff's Response at ¶ 11.  The Greene County plaintiffs also claim that the transfer to NY-32 Realty "deprived" them and "L&H of their valuable right, title and interest in the Property, which must be restored."  Defendant's Statement at ¶ 12.  Plaintiff denies in the same way that Plaintiff denies previous allegations that rely on the Greene County complaint.  Plaintiff's Response at ¶ 12.

Plaintiff submitted a claim to Defendant on February 23, 2021 demanding defense and indemnity for the Greene County action under the insurance policy in question. Plaintiff's Statement at ¶ 20.  Defendant disclaimed coverage on November 23, 2021.  Id. at ¶ 21.  When Han, Zhang, and Pei filed a motion to consolidate and file an amended complaint in the New York County action, Plaintiff on April 7, 2022 submitted a claim for coverage.  Id. at ¶ 22.  Defendant disclaimed coverage for the same reasons it had denied coverage in the earlier action.  Id. at ¶ 23.

Plaintiff filed its Complaint in this Court on July 29, 2022.  See dkt. # 1.  Plaintiff's Complaint alleges that the "action involves a dispute over title insurance coverage for claims seeking to vacate, cancel, and/or extinguish Plaintiff's deed to property in Greene County, NY."  Id. at ¶ 1.  Plaintiff alleges that NY-32 purchased title insurance from the Defendant "for several contiguous parcels of property and, as part of that transaction, purchased a title insurance policy from Defendant."  Id.  The policy in question, Plaintiff alleges, "explicitly provides coverage for defects in and/or adverse claims to Plaintiff's title arising out of the "'failure of any person or entity to have authorized a transfer or conveyance' and/or arising out of 'fraud' and/or 'impersonation.'"  The Complaint contains three counts.  Count One seeks a declaratory judgment that the Defendant has a duty to defend Plaintiff "in the Greene County Action and/or the NY County Action."  Id. at ¶ 43.

Count Two seeks a declaratory judgment that Defendant has a duty to indemnify the Plaintiff in those actions.  Id. at ¶ 51.  Count Three alleges negligence by Defendant in its "pre-purchase diligence" regarding the transaction in question.  Id. at ¶ 56.

After service of the Complaint and discovery, the parties filed the instant motions and briefed the issues, bringing the case to its present posture.

## II.   LEGAL STANDARD

The parties seek summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly

6

supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.   ANALYSIS

For reasons that will become apparent, the Court will first address Defendant's motion.

### A.   Defendant's Motion

Defendant argues that the Court should grant Westcor summary judgment on Plaintiff's claims.  Defendant argues that the allegations in the Complaint make clear that Westcor has no duty to defend or indemnify Plaintiff in the underlying actions, and that no evidence supports a negligence claim.  The Court will address each argument in turn.

#### i.   Duty to Defend/Indemnify

Defendant first argues that Westcor had no duty to defend or indemnify Plaintiff in the lawsuit filed in New York County.  NY-32 was not a defendant in that action.  While plaintiffs filed a proposed Second Amended Complaint that named NY-32, the New York County court denied a motion to amend that contained that Complaint and instead transferred the case to Greene County.

The Court will grant the motion in this respect.  Plaintiff does not dispute that no complaint actually filed in New York County named Plaintiff as a defendant.  Defendant here had no obligation under the insurance contract to provide NY-32 a defense or indemnity in a case where NY-32 was not a party.

As to the underlying action in Greene County, where NY-32 is actually a named Defendant, Westcor argues that no duty of coverage exists under the policy due to an exclusion contained within the policy.

The issue here is whether an insurance policy creates an obligation to defend or indemnify. Defendant does not dispute that the insurance contract itself provides coverage for a defect in title such as the one that the underlying litigation in New York alleges. The policy in question provides coverage for "[a] defect in the Title caused by" a number of events, including "forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation," failures to file proper documents or take legal action required to perfect the title, defects in the execution of the title, proceedings related to the title that were "defective," and an "[u]nmarketable title." Insurance Policy, Exh. H to Declaration of Jonathan B. Nelson, dkt. # 17-11 ("Insurance Policy"), at Covered Risks. Instead, Defendant argues that no coverage is available under the policy because an exclusion contained in the insuring agreement applies. The policy provides that the risks covered are "subject to the exclusions from the coverage." Id. (all caps in original). In New York, a "[p]olicy's 'covered risks' affirmatively create coverage, whereas the [p]olicy's 'exclusions' expressly eliminate coverage. The total scope of coverage under the [p]olicy is thus the balance of the covered risks, less the exclusions." Fawn Second Ave. LLC v. First Am. Title Ins. Co., 610 F.Supp.3d 621, 634 (S.D.N.Y. 2022). The question here is thus whether an exclusion applies that bars coverage.

That exclusion in question provides:

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of: . . .

8

3.      Defects, liens, encumbrances, adverse claims, or other matters
        (a) created, suffered, assumed, or agreed to by the Insured Claimant.

Insurance Policy, at ¶ 3.

"It is well settled that an insurance company's duty to defend is 'exceedingly broad,'
and is broader than the duty to indemnify." Hillcrest Coatings, Inc. v. Colony Ins. Co., 151
A.D.3d 1643, 1645 (4th Dept. 2017) (quoting Automobile Ins. Co. of Hartford v. Cook, 7
NY3d 131, 137 (2006).  "The duty to defend arises whenever allegations of an underlying
complaint suggest 'a reasonable possibility of coverage,' even if facts outside the
pleadings 'indicate the claim may be meritless or not covered.'" Id. (quoting Automobile
Ins. Co. of Hartford, 7 N.Y.3d at 137) (internal quotations omitted)).  In addition, "if 'any of
the claims against an insured arguably arise from covered events, the insurer is required
to defend the entire action.'" Fieldstone Prop. Owners Assn., Inc. v. Hermitage Ins. Co.,
Inc., 16 N.Y.3d 257, 264 (N.Y. 2011) (quoting Town of Massena v. Healthcare
Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 443 (N.Y. 2009) (internal citations omitted)).

In New York, "an insurer's duty to defend arises where the allegations of the
complaint against the insured fall within the scope of the risks undertaken by the insurer."
N. River Ins. Co. v. ECA Warehouse Corp., 172 A.D.2d 225, 226 (1st Dept. 1991).  "Only if
the complaint, on its face, excludes every possible basis on which an insurer might be
held to be obligated to indemnify the insured can the insurer be relieved of the obligation
to defend."  Id.

Defendant here points to an exclusion in the policy.  "'To be relieved of its duty to
defend on the basis of a policy exclusion, the insurer bears the heavy burden of
demonstrating that the allegations of the complaint [in the underlying action] cast the

9

pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may be held obligated to indemnify the insured under any policy provision.'" Sammy v. First Am. Tit. Ins. Co., 205 A.D.3d 949, 954 (2d Dept. 2022) (quoting Frontier Insulation Contrs. v. Merchants Mut. Ins. Co., 91 NY2d 169, 175 (N.Y. 1997)). "The merits of the complaint are irrelevant and, 'an insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated, and this rights exists even if debatable theories are alleged in the pleading against the insured.'" Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 444 (N.Y. 2002) (quoting International Paper Co v. Continental Cas. Co., 35 N.y.2d 322, 325 (N.Y. 1974)). "[F]or a policy exclusion to be enforced, the insurer bears the burden of demonstrating that the language is clear and unmistakable, and that the exclusion applies in the particular case and is subject to no other reasonable interpretation." Barkan v. New York Schools Ins. Reciprocal, 65 A.D.3d 1061, 1064 (2d Dep. 2009).

Defendant argues that the Complaint in the Greene County case "alleges that the principals of NY-32 Realty knew that Maio and Su were not officers, directors or shareholders of L&H," and that such allegations make "clear that paragraph 3(a) of the Exclusions applies to exclude Policy coverage for the Insured." The Greene County complaint further alleges that the NY-32 principal, Elena Fu, engaged in similar conduct in Erie County, New York, shortly before the transaction covered by the Greene County case. Further, Defendant contends, none of the underlying facts made known in the state-court action would create a reasonable possibility that the insured may be held liable for an act or omission covered by the policy. The underlying complaint argues that the

transfer of property was part of a decade-long fraudulent scheme of which NY-32 was part, which would trigger the exclusion rather than coverage.  Moreover, the lawsuit in Erie County, which raised similar allegations of conduct undertaken at nearly the same time against Fu, who controls NY-32, provides another set of facts available to Defendant that point to involvement in fraud and a lack of coverage.

Plaintiff responds that the NY-32 seeks coverage for a risk covered by the policy–lack of authority–and thus is entitled to coverage under the policy.  The underlying complaint alleges that Miao and Su purported to convey the property in question from L&H to NY-32, but that they lacked the authority to transfer the deed.  NY-32 therefore contends that the underlying complaint invokes the coverage in the policy.   NY-32 further contends that the exclusion in question does not apply because, under New York law, an insurer has a duty to defend whenever there is a "reasonable possibility of coverage." Plaintiff argues that:

> Han, Zhang and Pei allege that Miao and Su lacked authority on behalf of L&H, which, if proven, alone would subject Plaintiff's deed to a judgment setting it aside . . . [case law cited by Plaintiff makes clear that the plaintiffs in the underlying case] do not need to prove Plaintiff's knowledge of that lack of authority.  Further although Plaintiff can raise and prove the good-faith purchaser defense, the onus is on Plaintiff to do so, which is clearly how that defense has been applied because courts almost always analyze whether the party raising it has made a prima facie showing for the defense.  As such, Defendant cannot use the good-faith purchaser defense to avoid its duty to defend.  Indeed, the very fact that Plaintiff must raise in the first instance and must make a prima facie showing that it did not have knowledge renders Exclusion 3 particularly insufficient to avoid defense coverage.

"'When an insurer seeks to disclaim coverage on the basis of an exclusion . . . the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations, *in toto*, are subject to no other interpretation.'" Euchner-USA,

Inc. v. Hartford Ins. Co., 754 F.3d 136, 142 (2d Cir. 2014) (quoting Auto Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137 (N.Y. 2006)).   "'Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier.'" Id. (quoting Brook Shopping Ctr. v. Liberty Mut. Ins. Co., 80 A.D.2d 292, 294 (1ˢᵗ Dept. 1981)).

A review of the underlying Complaint is in order.  Yiqing Han, Yiyan Zhang, and Zhongyi Pei filed the Complaint in the Greene County Supreme Court on behalf of L&H Resort Systems, LP and against NY-32.  See dkt. # 17-8.  The Complaint alleges that:

> 1.     This action represents the culmination of nearly a decade long period of fraudulent conduct and other criminal wrongdoing committed against Plaintiffs.  On or about February 27, 2020, Defendant and others worked in tandem to unlawfully transfer the Friar Tuck Inn without proper corporate authority and in direct contravention of a court-ordered stipulation in an action pending in New York County Supreme Court prohibiting the sale of the Inn without advance notice to Plaintiffs.  The foregoing has defrauded plaintiffs of approximately $5MM and deprived Plaintiffs of their ownership interest in the Friar Tuck Inn, and Plaintiffs are entitled to a judgment setting aside the conveyance of the deed to Defendant.

Id. at ¶ 1.  The Complaint points to four non-parties, Li Li ("Li"), Yuzheng Maio ("Miao"), William Su ("SU"), Yiyao Fu p/k/a Elena Fu ("Fu"), who were involved in the conduct giving rise to the claim.  Id. at ¶¶ 8-11.   On June 22, 2001, the plaintiffs in the Greene County case "entered into a partnership" with Li "in the name of L&H for the purchase of the Friar Tuck Inn[.]" Id. at ¶ 13.  On July 20, 2011, L&H purchased the Inn for $2.45 million.  Id. at ¶ 13.

The Greene County complaint further alleges that Zhang and Pei filed an action in New York County "against Li and others seeking an accounting and alleging various causes of action related to Li's mismanagement of L&H[.]" Id. at ¶ 15.  Pei and Zhang

12

eventually entered into a stipulation with Li and L&H that put in "place a temporary restraining order and preliminary injunction prohibiting Li from selling, transferring, disposing, or otherwise encumbering the Friar Tuck Inn[.]" Id.  The stipulation provided that Li was to provided at minimum 30 days notice before selling, transferring, or mortgaging the Inn.  Id.

The Greene County complaint further alleges that "Li caused L&H to fraudulently transfer the Inn to defendant NY-32 Realty on February 27, 2020." Id. at ¶ 16.  The Complaint alleges that "Greene County records show that Li recruited Maio and Su by having each of them falsely claim to hold positions of authority in L&H." Id.  Neither person, the Complaint contends, was "ever associated with L&H, never held the positions of 'President' and 'Member,' and neither owned any partnership interest at the time each of them executed the deed on behalf of L&H." Id.  As such, the Complaint contends, "Li, Maio and Su conspired with each other to fraudulently execute the deed without proper corporate authority." Id.

The Complaint points to other conduct by Li allegedly indicating fraud. Id. at ¶ 17.  According to the Complaint, "Li has also been accused of fraudulently conveying certain real property located in Erie County in the amount of $2MM without authorization." Id.  That transfer purportedly occurred on January 30, 2020–"a mere twenty days preceding her fraudulent transfer of the Friar Tuck Inn"–when Li "falsely [held] herself out as president of the record owner." Id.  Li allegedly transferred the Erie County property to "an entity controlled by Fu," who "also controls defendant NY-32 Realty." Id. NY-32 "now purportedly owns and controls the Friar Tuck Inn." Id.  The Complaint alleges that, after the fraudulent transfer to a Fu entity in Erie County, "Li conspired with Maio and Su to

13

fraudulently transfer the Friar Tuck Inn to an entity also controlled by Fu.  The transfer of

the Property was nothing more than a coordinated and concerted effort to defraud

Plaintiffs and take ownership to real property to which they have no lawful interest." Id.

> In the end, the Complaint alleges that:
>
> At all relevant times here, L&H is or was the owner of [the Inn] and NY-32 Realty knew that Maio and Su were not officers, directors, or shareholders of L&H and that both were without any authority to execute the Deed on behalf of L&H.  Rather, NY-32 Realty executed the Deed in order to gain an advantage unto themselves and to which they were not entitled, and have benefitted from the purported conveyance of the Property to the disadvantage of Plaintiffs.  Accordingly, the Deed to the Inn must be vacated."

Id. at ¶ 18.  The Complaint contains one cause of action, to set aside the deed and restore

ownership of the property to L&H and Plaintiffs.

> The Court is persuaded that exclusion 3(a) applies to the underlying complaint and

relieves Defendant of a duty to defend or indemnify.   As explained, the policy contains an

exclusion for "[d]efects, liens, encumbrances, adverse claims, or other matters (a) created,

suffered, assumed, or agreed to by the Insured Claimant."  Insurance Policy, at ¶ 3.  The

allegations in the Greene County complaint related above accuse NY-32 of knowingly

participating in a scheme that fraudulently transferred title to the property in from L&H to

NY-32.  The Greene County action seeks to set aside the deed due to a defect created in

part by the conduct of NY-32.  The Greene County Complaint fits that conduct into a larger

series of actions by NY-32 and others which made real-estate transfers through

unauthorized parties and thus obtained title to property by fraudulent means.  The

allegations in the Complaint therefore "cast that pleading solely and entirely within the

policy exclusions" and "the allegations, *in toto*, are subject to no other interpretation.'"

Euchner-USA, Inc., 754 F.3d at 142.  Nothing else in the underlying complaint accuses

NY-32 of engaging in conduct that might be covered by the policy.  The totality of the

underlying complaint focuses on intentional conduct by NY-32 to obtain title to the Inn

through an intentionally fraudulent scheme.  That sort of scheme is subject to the

exclusion.

Plaintiff cites to Euchner-USA to argue that a duty to defend exists for Westcor

because, "if any of the claims against the insured arguably arise from covered events," the

duty to defend applies.  In Euchner-USA, the district court concluded that the insurer had

no duty to defend because the underlying complaint alleged intentional conduct and the

insurance policy contained an exclusion "for civil or criminal liability arising out of '[a]ny

dishonest, fraudulent, criminal or malicious act.'" 754 F.3d at 138.  The underlying

complaint alleged that the insured's employee had sexually harassed the plaintiff in the

underlying complaint and the employer retaliated against the harassed employee for

complaining about the conduct.  Id.  The Court of Appeals reversed because the

underlying plaintiff had filed an amended complaint that added claims that the underlying

defendant "improperly classified" the underlying plaintiff under the Employee Retirement

Income Security Act of l974 ("ERISA"), and this claim implicated a portion of the policy that

provided coverage for "'any negligent act, error or omission in the administration of" the

underlying defendant's "'employee benefits programs.'" Id. at 141.  Because "there was a

reasonable possibility of coverage under" defendant's policy on the underlying ERISA

claims, the defendant "had a duty to defend" the plaintiff.  Id. at 142-43.

The Court notes that the question in Euchner was whether there were allegations in

the underlying complaint that fit outside the exclusion in the policy for intentional conduct.

The Court of Appeals concluded that the ERISA claim in the Euchner complaint alleged

conduct not covered by the exclusion.  Plaintiff does not point to any such allegation in the Complaint.  Instead, Plaintiff argues that there could be a defense to the allegations in the underlying complaint that implicate Plaintiff.  Such an argument does not point to allegations not covered by the policy exclusion, but instead offers a defense to conduct covered by the policy exclusion.  The Euchner court accepted that allegations in the underlying complaint that implicated intentional conflict triggered the policy exclusion.  The possibility of coverage that created the duty to defend were new allegations that did not implicate the exclusion.  Plaintiff points to no such allegations in this case.  Plaintiff instead points to a possibility of defense for the allegations in the underlying complaint, which does not raise the same issue.  As such, Euchner does not persuade the Court that a different outcome is in order.

The Court will therefore grant the motion in this respect and find that the evidence supports no conclusion other than that Defendant had no duty to defend or indemnify Plaintiff on the Greene County action due to Exclusion 3(a) in the insurance policy.

### i.   Negligence Claim

Defendant next seeks summary judgment on Plaintiff's negligence claim. Defendant argues that New York law does not permit a negligence claim based on a title insurer's failure to disclose a defect.  Plaintiff responds that it "does not oppose the part of Defendant's motion that is directed at Plaintiff's third cause of action for negligence, and Plaintiff stipulates to withdraw that claim."

The Court will therefore grant the motion in this respect as unopposed.

### B.   Plaintiff's Motion

16

Plaintiff seeks partial summary judgement, arguing that the Court should find that the Defendant has a duty to defend on the underlying matter.  The Court will the deny that motion for the reasons stated in explaining why the Court will grant Defendant's motion.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, dkt. # 17, is hereby **GRANTED**.  Plaintiff's motion for partial summary judgment, dkt. # 19, is hereby **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.


**IT IS SO ORDERED.**


**Dated:** September 5, 2023

Thomas J. McAvoy
Senior, U.S. District Judge